UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGELA HORNE, | : | |
| | : | |
| Plaintiff | : | Civil Action No. |
| | : | |
| | : | **PLAINTIFF REQUESTS A** |
| -vs- | : | **TRIAL BY JURY** |
| | : | |
| THE WEDGE MEDICAL CENTER, INC. | : | |
| | : | **COMPLAINT** |
| Defendants | : | |
| | : | |

Plaintiff, ANGELA HORNE ("Plaintiff" and "Ms. Horne") by and through undersigned counsel hereby files this Civil Action Complaint against, Defendant, THE WEDGE MEDICAL CENTER, INC. ("Defendant" and "Wedge") and upon information and belief avers the following:

**NATURE OF THE CASE**

This action is brought by Plaintiff, ANGELA HORNE, to redress unlawful employment practices committed by Defendant, THE WEDGE MEDICAL CENTER, INC., in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA") and the Philadelphia Fair Practices Ordinance. Plaintiff asserts claims of race discrimination, hostile work environment, unlawful retaliation, and wrongful termination.

During her employment, Plaintiff was subjected to discriminatory treatment, harassment, disparate scrutiny, reduction of work hours, exclusion from meetings and therapy groups, and racially charged aggressions because she is Black/African American. Plaintiff further complained to Human Resources regarding the ongoing discrimination and harassment in the workplace and opposed Defendant's unlawful conduct. Despite Plaintiff's complaints, Defendant failed to take

1

corrective action and instead retaliated against Plaintiff by further reducing her work opportunities and ultimately terminating her employment shortly after she engaged in protected activity.

As a result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered economic damages, emotional distress, humiliation, embarrassment, reputational harm, and other related injuries. Plaintiff seeks all available legal and equitable relief under Title VII, 42 U.S.C. § 1981, and the Philadelphia Fair Practices Ordinance, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs, and all other appropriate relief.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

2. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so closely related to the federal claims that they form part of the same case or controversy.

3. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events and omissions giving rise to the claims occurred within the County of Philadelphia, Commonwealth of Pennsylvania, where Plaintiff was employed by Defendant and where the discriminatory and retaliatory conduct occurred.

4. On or around February 6, 2026, the U.S. Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Dismissal and Notice of Rights regarding EEOC Charge Number 530-2024-06990.

2

5.  Plaintiff initiates this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue, in compliance with the requirements of 42 U.S.C. § 2000e–5(f)(1).

## PARTIES

6.  Plaintiff, ANGELA HORNE ("Plaintiff" or "Horne"), is an adult individual who resides in the Commonwealth of Pennsylvania, in the City of Philadelphia.

7.  Defendant, THE WEDGE MEDICAL CENTER, INC. ("Defendant" or "Wedge"), is a business organization licensed to and regularly conducting business within the Commonwealth of Pennsylvania, including within the City and County of Philadelphia, with offices located at 6711 Old York Road, Philadelphia, Pennsylvania 19126.

8.  At all times relevant hereto, Defendant operated an outpatient mental health and recovery treatment center located at 6711 Old York Road, Philadelphia, Pennsylvania 19126.

9.  At all times material hereto, Plaintiff was qualified for the position she held and performed her job duties in a satisfactory manner consistent with Defendant's legitimate expectations.

10. At all times relevant to this action, Plaintiff was employed by Defendant as a W-2 employee within the meaning of the applicable federal and state anti-discrimination statutes.

11. At all times relevant hereto, Defendant employed fifteen (15) or more employees and was therefore an "employer" within the meaning of Title VII of the Civil Rights Act of 1964. Defendant was likewise subject to 42 U.S.C. § 1981 and all other applicable federal, state, and local anti-discrimination laws.

## MATERIAL FACTS

3

12. On or around July 5, 2022, Defendant hired Plaintiff for the position of Mental Health Outpatient Specialist.

13. Plaintiff's position originated as a full-time position with forty (40) hours per week and unlimited overtime.

14. Almost immediately into her employment, Plaintiff noticed that Defendants treated black employees, disproportionately to white, Caucasian employees.

15. Plaintiff was hired by Sharon Stibbins-Walker, Defendant's Director of Mental Health Outpatient Services.

16. Plaintiff received consistent, positive feedback from Ms. Stibbins-Walker and was lauded for finishing the training for her position within one week as she was the first employee to have done so.

17. During the course of Plaintiff's employment, Defendant relocated from the Broad Street location to a new location on Germantown Avenue.

18. One month after Plaintiff relocated to the Germantown location, Plaintiff was told that their employment was going to change from full-time to part-time.

19. As a result of the reduction in hours, Plaintiff began looking for a full-time position.

20. In or around April 2023, Defendant told Plaintiff that they were hiring a full-time position in the Partial Day Program.

21. Plaintiff applied for the full-time position and received a job offer for the new position in the Partial Day Program. Plaintiff concurrently retained the part-time position in the Mental Health Outpatient Services.

22. The Director of the Partial Day Program, Michelle Campbell, was Plaintiff's new supervisor.

4

23. Plaintiff excelled in her new position and began implementing group activities including day trips, games, and other activities.

24. Within one month of undertaking the new full-time position and the part-time position, she was told by Defendant that she was earning too much money.

25. Defendant's Director of Programs proceeded to cut Plaintiff's second position with the company from twenty-eight (28) hours to ten (10) hours per week.

26. During the meeting where Plaintiff learned that her hours were being reduced, the Director of Programs began finding issues with Plaintiff's work product.

27. At all times, Plaintiff acted in accordance with company policy and any and all allegations of disciplinary issues were pretextual and given to harass Plaintiff and escalate the discrimination and harassment in the workplace.

28. All issues found by the Director of Programs were all minor fixable issues.

29. Plaintiff then learned that none of her similarly situated white, Caucasian co-workers had their hours reduced as a result of fixable mistakes.

30. Plaintiff immediately rectified all of the alleged errors. Yet, Plaintiff continued to be left out of meetings and had her therapy groups eliminated.

31. Defendant's clients complained about the reduction in therapy time with Plaintiff.

32. Defendant's human resources department intervened and prevented Defendant's program director from cutting her hours further.

33. Plaintiff additionally complained to human resources that she felt she was being singled out and targeted for retaliation because her hours were being reduced, as none of her similarly situated co-workers' hours were reduced.

34. Defendant had a Supervisor Brian Decker who was a substantially younger Caucasian male with less education than Plaintiff who worked under the Director of Programs, Michelle Campbell.

35. Brian Decker consistently berated Plaintiff and consistently used racially charged aggressions for the purpose of degrading and demeaning Plaintiff. By means of example only and not to be construed as an exhaustive list, Brian chastised Plaintiff when she lost her keys to the facility, which were on the same key ring as her house keys and car keys.

36. Brian Decker also chastised Plaintiff when she burned a bag of popcorn one day in the microwave at work.

37. Brian Decker told Plaintiff's other co-workers to ostracize Plaintiff. Brian Decker also encouraged Defendant's clients to not do group therapy with Plaintiff.

38. In or around mid-July 2023, Plaintiff engaged in protected activity when she went to the Human Resources department to report the ongoing discrimination and harassment in the workplace.

39. Plaintiff reported that she felt that she was being singled out and targeted for being black, African American.

40. Plaintiff reported that she'd been subjected to age discrimination as Plaintiff was the only fifty-five (55) year old women working in therapy groups.

41. On or around August 25, 2023, just weeks after Plaintiff engaged in a protected activity when she reported discrimination and harassment in the workplace, Defendant abruptly terminated Plaintiff's employment.

42. Defendants targeted Plaintiff and subjected her to discrimination and harassment in the workplace.

43. As a result of Plaintiff engaging in protected activity by reporting the discrimination and harassment in the workplace, Defendants began a campaign of retaliation.

44. Defendant's reduced Plaintiff's hours and encouraged Plaintiff's clients not to participate in Plaintiff's group therapy.

45. Defendant's actions reflect violations of the Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA").

46. Defendant retaliated against Plaintiff by terminating her employment just four (4) weeks after she engaged in a protected activity.

47. Defendants had a duty to prevent discrimination and harassment in the workplace.

48. Defendant failed to investigate Plaintiff's complaint or to take appropriate remedial measures.

49. Plaintiff was repeatedly targeted for adverse action including termination due to Plaintiff's membership in a protected class based upon race and due to Plaintiff's reports of and opposition to the discrimination and harassment in the workplace.

50. As a result of Defendant's conduct, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

51. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

52. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer a loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

53. Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

54. Plaintiff has further experienced severe emotional and physical distress.

55. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against the Defendant, jointly and severally.

56. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

57. Defendant at all times refused to investigate or take appropriate remedial action in response to Plaintiff's complaints of discrimination, harassment and hostile work environment.

58. Defendant's discriminatory conduct was severe and pervasive, created a hostile work environment for Plaintiff.

59. The above are just some of the examples, of the discrimination and retaliation to which Defendants subjected Plaintiff.

60. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

## <u>COUNT I</u>
## FOR DISCRIMINATION UNDER TITLE VII

61. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

62. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, prohibits employers from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment because of race.

63. Plaintiff is an African American woman and is a member of a protected class under Title VII.

64. Defendant discriminated against Plaintiff because of her race by, inter alia, reducing her work hours, subjecting her to heightened and disparate scrutiny, criticizing her for minor and

fixable issues, excluding her from meetings and therapy groups, encouraging clients not to participate in Plaintiff's therapy sessions, and treating Plaintiff less favorably than similarly situated white employees.

65. Plaintiff's similarly situated white coworkers were not subjected to the same scrutiny, reduction in hours, exclusion, criticism, or hostile treatment for similar conduct or minor workplace mistakes.

66. Defendant further discriminated against Plaintiff by subjecting her to racially charged aggressions and hostility in the workplace and ultimately terminating her employment because of her race.

67. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff suffered loss of income, loss of benefits, emotional distress, humiliation, embarrassment, and other compensable damages.

**COUNT II**
**HOSTILE WORK ENVIRONMENT UNDER TITLE VII**

68. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

69. Title VII prohibits discrimination in the form of a hostile work environment based upon race.

70. During the course of her employment, Plaintiff was subjected to unwelcome harassment and hostility because she is African American.

71. The harassment and hostile conduct included repeated criticism and berating by supervisor Brian Decker, racially charged aggressions, exclusion from meetings and therapy

groups, undermining Plaintiff's authority and effectiveness with clients, disparate scrutiny, and encouraging coworkers and clients to ostracize Plaintiff.

72. The conduct directed toward Plaintiff was severe and pervasive and altered the terms and conditions of Plaintiff's employment by creating an intimidating, hostile, offensive, and abusive working environment.

73. Defendant knew or should have known of the hostile work environment through Plaintiff's repeated complaints to Human Resources and management but failed to take prompt and appropriate remedial action.

74. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered emotional distress, humiliation, embarrassment, and other compensable damages.

**COUNT III**
**RETALIATION UNDER TITLE VII**

75. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

76. Title VII, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against employees who oppose discriminatory practices or participate in protected activity.

77. Plaintiff engaged in protected activity when she complained to Human Resources and management regarding race discrimination, harassment, disparate treatment, and the hostile work environment she was experiencing.

78. After Plaintiff engaged in protected activity, Defendant retaliated against Plaintiff by increasing hostility toward her, continuing to reduce her hours and work opportunities, escalating scrutiny and criticism of her work, excluding her from meetings and therapy groups, encouraging clients not to participate in her therapy sessions, and ultimately terminating her employment.

79. Plaintiff's protected activity was a substantial and motivating factor in Defendant's retaliatory conduct.

80. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered economic damages, emotional distress, humiliation, embarrassment, and other compensable injuries.

**COUNT IV**
**DISCRIMINATION AND RETALIATION UNDER**
**THE PENNSYLVANIA HUMAN RELATIONS ACT**

81. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

82. The Pennsylvania Human Relations Act, 43 P.S. § 955, and the Philadelphia Fair Practices Ordinance prohibit discrimination, harassment, and retaliation in employment on the basis of race.

83. Plaintiff is a member of a protected class and engaged in protected activity by opposing discriminatory practices in the workplace.

84. Defendant discriminated and retaliated against Plaintiff by subjecting her to disparate treatment, reduction in hours, heightened scrutiny, exclusion, harassment, hostile working conditions, and termination because of her race and because she opposed unlawful discriminatory conduct.

85. Defendant failed to take prompt and effective remedial action despite Plaintiff's complaints regarding discrimination and harassment in the workplace.

86. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered emotional distress, economic loss, humiliation, embarrassment, and other compensable damages.

**COUNT V**
**RACE DISCRIMINATION AND RETALIATION UNDER 42 U.S.C. § 1981**

87. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

88. 42 U.S.C. § 1981 guarantees all persons the same right to make and enforce contracts as is enjoyed by white citizens, including all benefits, privileges, terms, and conditions of the contractual employment relationship.

89. Plaintiff is African American and is a member of a protected class under Section 1981.

90. Defendant intentionally discriminated against Plaintiff on the basis of race by interfering with the terms and conditions of her employment, including reducing her hours, subjecting her to disparate scrutiny and criticism, excluding her from meetings and therapy groups, subjecting her to racially charged aggressions and hostility, undermining her work with clients, and terminating her employment.

91. Plaintiff further engaged in protected activity by complaining about race discrimination, harassment, and hostile treatment in the workplace.

92. Defendant retaliated against Plaintiff for engaging in protected activity by escalating hostility and scrutiny against Plaintiff and ultimately terminating her employment.

93. Defendant's conduct was intentional, malicious, willful, and undertaken with reckless indifference to Plaintiff's federally protected rights.

94. As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff suffered loss of income, loss of benefits, emotional distress, humiliation, embarrassment, and other compensable damages.

### JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant, in an amount to be determined at the time of trial plus interest, including but not limited to, all emotional distress, back pay, front pay, punitive damages, liquidated damages, statutory damages, attorney's fees, costs, and disbursements of action; and, for such other relief as the Court deems just and proper.

Dated: May 7, 2026

**FREUNDLICH & LITTMAN, PLLC**
Attorneys for Plaintiff

By: */s/ Samuel C. Wilson, Esq.*
Samuel C. Wilson, Esquire
1425 Walnut Street, Suite 200
Philadelphia, PA 19102
P: (215) 545-8500
F: (215 545-8510
E: *sam@fandllaw.com*